UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| KAYLA JO FRESE, Individually and as Administrator of the Estate of ANDREW JOHN FRESE, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:21-cv-04004-SLD-JEH |
| NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK and BNSF RAILWAY COMPANY, d/b/a BNSF RAILWAY, d/b/a BNSF, | ) ) ) ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | |
| BUREAU SERVICE COMPANY, d/b/a AG VIEW FS, INC., GROWMARK, INC., PETER HERMES, and SANDRA HERMES, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

ORDER

Before the Court are Peter and Sandra Hermes's ("Hermes Defendants") Motion for

Summary Judgment, ECF No. 74, and Plaintiff Kayla Jo Frese's Motion to Strike, ECF No. 101.

For the reasons that follow, Hermes Defendants' Motion for Summary Judgment is GRANTED

IN PART and DENIED IN PART, and Plaintiff's Motion to Strike is GRANTED.

1

## BACKGROUND[1]

Peter[2] owns a farm in Wyanet, Bureau County, Illinois, and has had sole possession of the farm since 2008. The farm consists of two parcels—north and south—which are diagonally separated from each other by a parallel set of railroad tracks. *See* Field Plan Order 2, Resp. Mot. Summ. J. Ex. B, ECF No 84-2 (depicting the parcels and tracks). The parcels are connected by a private railroad crossing, designated by the United States Department of Transportation ("USDOT") as USDOT No. 079703Y ("the Crossing"). Operators of farm equipment, such as tractors, need to use the Crossing to travel from one parcel of Peter's farm to the other parcel. The Crossing is not open to the public and the only users of the Crossing are people performing farmwork for Peter—in other words, the Crossing is for the exclusive benefit of Peter.

Two stop signs are located at the Crossing, one for northbound vehicles and one for southbound vehicles. *See* Mem. Supp. Mot. Summ. J. 7–8, ECF No. 75 (depicting the stop signs). BNSF Railway Company, d/b/a BNSF Railway, d/b/a BNSF ("BNSF") owns the two railroad tracks which run through the Crossing, the right of way for the tracks, and the two stop signs. National Railroad Passenger Corporation, d/b/a Amtrak ("Amtrak") has an agreement with BNSF allowing Amtrak the right to operate over the railroad tracks. BNSF conducts inspections of the Crossing, as required by federal regulation. BNSF is responsible for maintaining its railroad tracks and supporting structures, pursuant to applicable federal regulations, and oversees vegetation control within its right of way. BNSF maintains the grade of the Crossing by adjusting the grade as necessary to provide a level entry—extending two feet

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from Hermes Defendants' statement of undisputed material facts, Hermes Defs.' Statement Undisputed Facts Summ. J. 1–4, ECF No. 76, the response thereto, Resp. Mot. Summ. J. 6–9, ECF No. 84, Hermes Defendants' reply thereto, Reply Mot. Summ. J. 2–3, ECF No. 100, and exhibits attached to the filings.
[2] Because Peter and Sandra Hermes share the same last name, the Court refers to Peter and Sandra by their first names. For similar reasons, the Court uses Andrew to refer to Plaintiff's decedent, Andrew Frese.

from the ends of the railroad ties so the Crossing is level throughout—with such adjustments determined by the level of the farm fields. Hermes Defendants do not own the railroad tracks, crossing, stop signs, or other property at the Crossing, and do not maintain the railroad tracks, supporting track structures, stop signs, nor any vegetation abutting or adjacent to the Crossing.

Andrew was an employee of Bureau Service Company, d/b/a AG View FS, Inc. ("AG View"). On November 22, 2018, Andrew was working at Peter's farm, driving a tractor with two tanks filled with anhydrous ammonia and an attached anhydrous ammonia applicator sprayer. Peter did not relay any concerns to AG View about the slope of approach to the Crossing, the vegetation around the Crossing, nor provide any warnings that trains do not sound their horns at the Crossing. Plaintiff alleges that Andrew was struck and killed by an Amtrak train as he attempted to use the Crossing and that Amtrak and BNSF are liable for his death. *See generally* Pl.'s First Am. Compl. ("FAC"), ECF No. 83.

After removal to federal court and transfer to this Court, *see* Resp. Mot. Summ. J. 6–7, ECF No. 84, Amtrak and BNSF (collectively "Railroad Defendants") filed materially identical amended third-party complaints seeking contribution from AG View and Hermes Defendants, *see* Amtrak Answer FAC & Am. Third-Party Compl. 23–30, ECF No. 86; BNSF Answer FAC & Am. Third-Party Compl. 23–29, ECF No. 87. Railroad Defendants allege that Hermes Defendants were negligent because they:

a. Failed to provide additional warning to Andrew Frese or his employer of the need to stop his farm equipment prior to entering the tracks to ensure that it was safe to cross;
b. Failed to provide instruction or warning to Andrew Frese or his employer that railroad trains utilizing the tracks do not sound their horns on approach to the private crossing and that accordingly, additional visual care is needed prior to entering the track area;
c. Failed to safely design, modify or construct a safe approach to the railroad tracks by making changes to their property so that the grade to the tracks was not unusually steep;

3

   d.  Failed to notify the BNSF of the need to modify the approach to the railroad
       tracks in light of the nature and type of activity using the farm crossing; and/or
   e.  Failed to notify or otherwise request the BNSF to remove foliage or vegetation
       that may be on its right-of-way, that did not pose any risk to train traffic or
       otherwise obscure train signals controlling the train traffic, but which might or
       could obscure the vision of farm equipment operators approaching the tracks.

BNSF Answer FAC & Am. Third-Party Compl. 28–29.  Hermes Defendants filed a motion for

summary judgment, asserting that they cannot be liable for contribution because "they had no

duty as adjacent landowners to maintain the railroad tracks, the crossing, or remove any foliage

or shrubbery from the BNSF-owned crossing and tracks."  Mem. Supp. Mot. Summ. J. 3.

Railroad Defendants filed a joint response opposing the summary-judgment motion.  *See*

*generally* Resp. Mot. Summ. J.[3]

## DISCUSSION

### I.  Legal Standard

    Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  To preclude summary judgment, the nonmovant must "make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court

must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d

767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in

favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

However, the nonmovant "is not entitled to the benefit of inferences that are supported by only

speculation or conjecture."  *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir.

---

[3] The Court finds that Hermes Defendants' summary-judgment motion remains ripe for adjudication—despite the
filing of amended pleadings after Hermes Defendants' motion was filed—as the amendments to those pleadings do
not affect the issues raised by the motion.  *See* Resp. Mot. Summ. J. 2 n.1.

2014) (quotation marks omitted).  "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II.    Analysis

### A.  Motion to Strike

Hermes Defendants argue in their reply brief that even if the Court were to find that they owed some duty to Andrew, they are still entitled to summary judgment because the railroad crossing was an "open and obvious" condition.  *See* Reply Mot. Summ. J. 5–7, ECF No. 100 (quoting *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996)).  Plaintiff moves to strike this portion of Hermes Defendants' reply.  Mot. Strike 1–3.  She notes that Hermes Defendants raised the "open and obvious" issue for the first time in their reply and argues that adjudication of this issue in the context of Hermes Defendants' summary-judgment motion will affect her future motions.  *Id.* ¶¶ 5–7; Brown Aff. ¶¶ 6–7, Mot. Strike Ex. 1, ECF No. 101-1 (stating that the parties were still conducting discovery relevant to the "open and obvious" issue and that it likely will be the subject of a future motion).  Hermes Defendants did not file a response to Plaintiff's motion to strike.  *See* Civil LR 7.1(B)(2) ("If no response is timely filed, the presiding judge will presume there is no opposition to the motion . . .").

The Court finds that Hermes Defendants asserted the "open and obvious" issue improperly.  The Court's Local Rules make clear that a reply to a summary-judgment response is "limited to new matters raised in the response."  Civil LR 7.1(D)(3)(b) (emphasis removed).  More generally, "arguments raised for the first time in the reply brief are waived."  *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011).  Hermes Defendants made no mention of

the "open and obvious" issue in their motion for summary judgment, nor did Railroad

Defendants in their response. Because Hermes Defendants raised this waived issue in

contravention of the Court's Local Rules and failed to oppose Plaintiff's motion to strike, the

Court GRANTS the motion to strike and will not consider the "open and obvious" issue in its

disposition of Hermes Defendants' motion for summary judgment. *See Cleveland v. Porca Co.*,

38 F.3d 289, 297 (7th Cir. 1994) (stating that a motion to strike is a proper procedural

mechanism for challenging "the offending portions of the reply brief").

### B. Summary Judgment

"In a negligence action, the plaintiff must plead and prove the existence of a duty owed

by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the

breach." *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014).[4]  In the absence of a

duty, "no recovery by the plaintiff is possible as a matter of law and summary judgment in favor

of the defendant is proper." *Id.* at 689 (quotation marks omitted). "Whether a duty exists is a

question of law for the court to decide." *Id.*  When assessing duty, Illinois courts generally ask

> whether [the] defendant and [the] plaintiff stood in such a relationship to one
> another that the law imposed upon [the] defendant an obligation of reasonable
> conduct for the benefit of [the] plaintiff. Four factors guide [the] duty analysis: (1)
> the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the
> magnitude of the burden of guarding against the injury, and (4) the consequences
> of placing that burden on the defendant.

---

[4] Both Hermes Defendants and Railroad Defendants agree that the Court's resolution of this issue is governed by the
application of Illinois law. *See* Mem. Supp. Mot. Summ. J. 10–11 ("[W]hen no party raises an issue regarding
choice of law, the federal court may simply apply the forum state's substantive law." (citing *Camp v. TNT Logistics
Corp.*, 553 F.3d 502, 505 (7th Cir. 2009))); Resp. Mot. Summ. J. 10 n.2 ("Amtrak and BNSF do not dispute that
Illinois substantive law controls this issue [of a landowner's duty]."). Because the claims are governed by Illinois
law, the Court's "role is to decide questions of state law as [the Court] predict[s] the Illinois Supreme Court would
decide them." *Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 370 (7th Cir. 2023) (quotation marks omitted).
"Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control,
unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Dunn v.
Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).  "When given a choice between an interpretation of Illinois law
which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and
more reasonable path (at least until the Illinois Supreme Court tells us differently)." *Butler v. Holstein Ass'n, USA,
Inc.*, No. 21-CV-3226, 2023 WL 8085847, at *8 (C.D. Ill. Nov. 21, 2023) (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d
1402, 1412 (7th Cir. 1994)).

*Id.* (quotation marks omitted).

The narrow issue presented to the Court is one of duty.  Hermes Defendants argue they owed no duty to Andrew; Railroad Defendants contend that they did.  *See, e.g.*, Mem. Supp. Mot. Summ. J. 3; Resp. Mot. Summ. J. 3.  Hermes Defendants emphasize that they do not own the Crossing—as compared to BNSF's ownership of the Crossing, railroad tracks, and stop signs—arguing that BNSF had the exclusive duty to conduct inspections, monitor vegetation, and otherwise maintain the Crossing.  Mem. Supp. Mot. Summ. J. 11–12.  They cite a federal regulation which imposes upon entities like BNSF the duty to maintain "[v]egetation on railroad property which is on or immediately adjacent to roadbed," *id.* at 12 (quoting 49 C.F.R. § 213.37 (West 2021)), and an Illinois law which requires rail carriers to follow federal regulations and "construct, maintain, and operate all of its equipment, track, and other property in this State in such a manner as to pose no undue risk to its employees or the person or property of any member of the public," *id.* at 13 (quoting 625 ILCS 5/18c-7401).  Railroad Defendants argue that these contentions miss the mark—what is at issue in this summary judgment motion is Hermes Defendants' duty, not their duties.  *See* Resp. Mot. Summ. J. 15–16 ("[T]he duty owed by the BNSF is irrelevant to the question of whether the Hermes also owed [Andrew] a common law duty of reasonable care.").  The Court finds that Hermes Defendants failed to show that these duties imposed upon Railroad Defendants dictate as a matter of law that no corollary common-law duty can exist for them as the owners or occupiers of land adjacent to the Crossing.[5]

---

[5] To the extent Hermes Defendants argue that the federally imposed duty preempts any state-law duty, they have not met their burden.  The Federal Railroad Safety Act ("FRSA") provides that "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the [relevant federal official] prescribes a regulation or issues an order *covering* the subject matter of the State requirement."  49 U.S.C. § 20106 (emphasis added).  Interpreting a prior version of the FRSA, the Supreme Court held that the use of "covering" meant that "[t]o prevail on the claim that the regulations have pre-emptive effect, [the movant] must establish more than that they 'touch upon' or 'relate to' that subject matter," and noted that the FRSA's preemption provision "display[ed] considerable solicitude for state law in that its express pre-emption clause is both prefaced and succeeded by express

7

Railroad Defendants assert five bases for their allegation that Hermes Defendants owed some duty to Andrew, but only four merit analysis.[6]  The Court analyzes the duties Railroad Defendants argue that Hermes Defendants owed to Andrew in two groups: (1) duty to warn Andrew or his employer of both the need to stop at the Crossing prior to entry and that trains do not sound their horns on approach to the Crossing; and (2) duty to notify BNSF of the need to modify the approach of the tracks or the need to remove vegetation on its right of way that did not obscure train signals but which could obscure the vision of farm-equipment operators approaching the tracks.  *See* Hermes Defs.' Statement Undisputed Facts Summ. J. ¶ 4, ECF No. 76.

### 1.  Duty to Warn

Railroad Defendants allege that Hermes Defendants had a duty to warn Andrew or his employer of the need to stop prior to entering the Crossing to visually ensure it was safe and that trains do not sound their horns on approach to the Crossing.  *Id.* ¶¶ 4a–4b.  In refuting these potential duties, Hermes Defendants point primarily to two cases: *Esworthy v. Norfolk &*

---

saving clauses." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664–65 (1993), *superseded on other grounds by statute*, Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110–53, 121 Stat. 266 (2007); *accord Norfolk S. Ry. Co. v. Box*, 556 F.3d 571, 573 (7th Cir. 2009) (citing *Easterwood*, 507 U.S. at 664–65).  It is insufficient to merely show that Railroad Defendants had a duty related to Plaintiff's claims concerning overgrown vegetation. *See, e.g.*, *Fritzsche v. Union Pac. R.R. Co.*, 707 N.E.2d 721, 724–25 (Ill. App. Ct. 1999) (holding that "the vegetation-covered land near, but not immediately adjacent to, the railbed" was "not subject to federal regulation and its preemptory powers").  Hermes Defendants have not shown that federal regulations "cover" the claims at issue in this case, and the Court rejects the preemption argument, to the extent such an argument is implied by Hermes Defendants' motion for summary judgment.

[6] Railroad Defendants allege that Hermes Defendants had a duty to "safely design, modify or construct a safe approach to the railroad tracks so that the grade to the tracks was not unusually steep."  Hermes Defs.' Statement Undisputed Facts ¶ 4c.  This alleged duty concerns a condition on Peter's farm.  In their motion for summary judgment, Hermes Defendants did not make any specific arguments concerning duties that they might owe to Andrew due to conditions on Peter's farm itself, as opposed to the Crossing.  Only in their reply did they belatedly raise the notion that any dangerous conditions on Peter's farm were open and obvious and therefore no duty was owed to Andrew.  *See* Reply Mot. Summ. J. 5–7.  The Court found that this issue was improperly raised by Hermes Defendants.  *See supra* Section II.A.  As such, Hermes Defendants do not point to any evidence nor make any validly raised argument that they did not owe Andrew a duty due to conditions on Peter's farm.  This failure by Hermes Defendants means the Court cannot say as a matter of law that no duty was owed to Andrew regarding the approach's grade.  Therefore, the Court will not grant summary judgment as to that alleged duty.

*Western Railway Co.*, 520 N.E.2d 1044 (Ill. App. Ct. 1988); and *Williams v. Calmark Mailing Service, Inc.*, 608 N.E.2d 387 (Ill. App. Ct. 1992). *See* Mem. Supp. Mot. Summ. J. 13–14. In *Esworthy*, the plaintiff alleged that the trees on property adjacent to the intersection of a railroad-track and a public street blocked the decedent's view of oncoming trains. 520 N.E.2d at 1045–46. The defendant-railroad sought contribution from the trees' owners. *Id.* at 1045. The court held that "[t]here is no duty owed in Illinois for trees obstructing visibility of motorists on an adjoining highway by either a municipal landowner or a private one at a controlled intersection [where] the visibility of the traffic controls has not been obstructed." *Id.* at 1046. The court in *Williams* rejected the plaintiff's theory that the adjacent landowner "owed a duty to operate its facility and premises in a manner to avoid creating a dangerous condition at the railroad crossing" because the at-issue trailers parked on the adjacent landowner's property which allegedly obstructed the plaintiff's view of the railroad crossing "were not dangerous until the railroad allegedly acted negligently in not having flashing red lights and in operating its train too fast for conditions." 608 N.E.2d at 388–89. The court also noted that the plaintiff "did not come into contact with [the] defendant's land." *Id.* at 389.

Railroad Defendants argue that these cases are distinguishable. Resp. Mot. Summ. J. 14–15. They argue that *Esworthy* concerned "not what duty the property owner owed to persons *on his property*," but rather the duty owed "to a complete stranger traveling on the public street to trim vegetation on the owner's property that obscured the motorist's view of approaching train traffic." *Id.* They similarly seek to distinguish *Williams* on the grounds that the plaintiff "was not on or exiting from the defendant's property; he was using an adjacent public street," and emphasize the court's reliance "on the fact that the plaintiff had no contact with the defendant's land." *Id.* at 15 (citing *Williams*, 608 N.E.2d at 389).

The Court finds that *Esworthy* is largely inapposite because that court's brief discussion of duty emphasized the absence of a statutorily imposed duty for adjacent landowners with respect to unknown motorists at intersections with visible traffic-control devices.  *See* 520 N.E.2d at 1046 (citing *Pyne v. Witmer*, 512 N.E.2d 993, 995, 997 (Ill. App. Ct. 1987) (holding that the adjacent landowner owed no duty and focusing on the visible stop signs and the absence of statutorily imposed duties), *aff'd*, 543 N.E.2d 1304 (Ill. 1989)).  Here, Andrew was utilizing a private crossing which was not open to the public and was used solely by people who were present to benefit Hermes Defendants.  *See* Resp. Mot. Summ. J. 9.  As will be explored further below, the preexisting relationship between Andrew and Hermes Defendants significantly alters the relevant duty analysis, such that the Court does not find *Esworthy* to be "directly on point." *See* Mem. Supp. Mot. Summ. J. 13.

*Williams* is partially distinguishable for similar reasons—Andrew was on Hermes Defendants' land prior to the accident, unlike the plaintiff in *Williams*.  However, Railroad Defendants overemphasize this portion of the court's decision, as the court additionally relied on other factors as explained in the Illinois Supreme Court's decision in *Ziemba v. Mierzwa*, 566 N.E.2d 1365, 1366, 1368 (Ill. 1991), which was decided after the court's decision in *Esworthy*. *See Williams*, 608 N.E.2d at 389 ("We find *Ziemba* to be controlling.").

In *Ziemba*, a bike-riding plaintiff was injured by a dump truck exiting the defendant's unmarked driveway—"which was not visible to persons traveling on [the public road] due to foliage growing on [the] defendant's property"—and the Illinois Supreme Court stated that "[t]he critical inquiry [wa]s whether it was reasonably foreseeable that this type of accident would occur as a natural and probable result of foliage obscuring [the] defendant's driveway from the vision of travelers on [the public road]."  566 N.E.2d at 1366, 1368.  The Illinois Supreme Court

found that the accident "was not a reasonably foreseeable result of the condition on [the] defendant's land" because "the condition on [the] defendant's land posed no danger to [the] plaintiff absent the independent, negligent act of the [dump truck] driver." *Id.* at 1369. The Illinois Supreme Court also noted that imposing a duty on the defendant "would require [the] defendant to guard against the negligence of others," instead of simply "guarding against dangers created solely by conditions on his land." *Id.* (quotation marks omitted).

Here, it is undisputed that the Crossing was controlled by stop signs on either side. Hermes Defs.' Statement Undisputed Facts Summ. J. ¶ 12; *see also* Mem. Supp. Mot. Summ. J. 7–8 (depicting the stop signs); *id.* at 14 (pointing to the stop signs to argue that Railroad Defendants' "allegations that the Hermes should somehow have provided 'additional warning' to Andrew Frese to stop are untenable and hold no merit"). Additional warnings regarding the need to stop and look for trains—which Railroad Defendants argue were even more necessary because those trains customarily do not sound their horns upon approach to the Crossing, Resp. Mot. Summ. J. 14—would only be necessary if it was reasonably foreseeable that the farm-equipment operator would disregard those stop signs—in other words, be negligent. Imposing a duty upon Hermes Defendants to warn Andrew to stop and look both ways before proceeding would require Hermes Defendants "to guard against the negligence" of Andrew, instead of simply "guarding against dangers created solely by conditions on" Hermes Defendants' land. *See Ziemba*, 566 N.E.2d at 1368. Just as the defendant in *Ziemba* "had a right to expect that the truck driver would check for oncoming traffic before entering [the public road]," Hermes Defendants had the right to expect that Andrew would obey the stop signs by stopping and checking for oncoming trains before entering the Crossing. *Id.* at 1369. Because imposing a duty to warn under these facts would be "a considerably higher burden than guarding against dangers created solely by

11

conditions on [Hermes Defendants'] land," the Court finds that Hermes Defendants did not owe a duty to warn Andrew or his employer of the need to stop and look, nor of the custom that trains do not sound their horns on approach to the Crossing, as the duty to give such a warning was already discharged by the stop signs. *See id.*

### 2. Duty to Notify

The Court turns next to Railroad Defendants' contention that Hermes Defendants owed a duty to inform BNSF of the need to make certain changes to the Crossing or right of way, namely, to modify the grade of the approach or trim additional vegetation. *See* Hermes Defs.' Statement Undisputed Facts Summ. J. ¶¶ 4d–4e. Railroad Defendants' argument that Hermes Defendants' duties extended to conditions of the Crossing or right of way is premised on Andrew being Hermes Defendants' invitee. *See* Resp. Mot. Summ. J. 10–14.

> Illinois law imposes a duty upon premises owners and occupiers which varies with regard to the plaintiff's status on the premises. Entrants upon land are divided into three classifications: invitees, licensees, and trespassers. An invitee is defined as one who enters the premises of another with the owner's or occupier's express or implied consent for the mutual benefit of himself and the owner, or for a purpose connected with the business in which the owner is engaged.

*Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1268 (Ill. 1996) (citation omitted). "A landowner has a duty to provide a safe means of ingress and egress to his premises for his invitees." *Harris v. Old Kent Bank*, 735 N.E.2d 758, 764 (Ill. App. Ct. 2000). Hermes Defendants admit that the only users of the Crossing are people there to benefit them, *see* Resp. Mot. Summ. J. 9; Reply Mot. Summ. J. 2–3, and they state that Andrew was on Peter's farm to perform agricultural work connected to Hermes Defendants' business of farming, Hermes Defs.' Statement Undisputed Facts Summ. J. ¶ 8. The Court finds that Andrew was Hermes Defendants' invitee on the day of the accident.

Railroad Defendants argue that Andrew's status as an invitee means Hermes Defendants owed Andrew the duty to provide a safe means of ingress and egress from Peter's farm, and that such duty extended to property they did not own—specifically the Crossing and right of way—because the Crossing was the only means of access to and from the different parts of Peter's farm.  Resp. Mot. Summ. J. 10–14 (citing *Cooley v. Makse*, 196 N.E.2d 396 (Ill. App. Ct. 1964); *McDonald v. Frontier Lanes, Inc.*, 272 N.E.2d 369 (Ill. App. Ct. 1971); *Gilmore v. Stanmar*, 633 N.E.2d 985 (Ill. App. Ct. 1994)).  The plaintiff in *Cooley* was injured by a defect—from which a foreseeable risk of injury was "abundantly clear"—in the sole means of ingress and egress to the defendants' tavern, a brick sidewalk located on a municipal easement.  196 N.E.2d at 398. Because "[t]he defendants, whether lawfully or not, had assumed the right to use, enjoy and employ the sidewalk as a necessary adjunct of their possession, control and ownership of the tavern building," the court found that "[u]nder the peculiar facts of this case . . . the duty of the defendants . . . to their invitees extend[ed] beyond naked and precise property lines," and that "[h]aving prescribed the route to their invitees for ingress and egress to and from their building, it was their duty to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition."  *Id.*; *see also McDonald*, 272 N.E.2d at 372 (recognizing the "duty to provide an invitee with reasonably safe means of ingress and egress, both within the confines of the premises owned or controlled by the inviter and, within limitations dictated by the facts of the case, beyond the precise boundaries of such premises" (citations omitted)); *Gilmore*, 633 N.E.2d at 990–91 (finding a duty where the defendants appropriated a public sidewalk by building a canopy "over the public sidewalk and street for their own business purposes").

Hermes Defendants note that subsequent decisions discussing cases like *Cooley*, *McDonald*, and *Gilmore* warn against reading those decisions too broadly.  Reply Mot. Summ. J.

4–5 (citing *Burke v. Grillo*, 590 N.E.2d 964, 968 (Ill. App. Ct. 1992) (disagreeing with another court's conclusion in a different case because that court "interpreted our decisions in *Cooley* and *McDonald* too broadly")).  For example, in one case, a child was playing at a playground located south of her apartment and was crossing an immediately adjacent private parking lot—which was owned not by the playground-defendants but instead by the apartment-defendants—when she was struck by a motorist.  *Hanks v. Mount Prospect Park Dist.*, 614 N.E.2d 135, 136 (Ill. App. Ct. 1993).  The plaintiff asserted that the playground-defendants were negligent because they failed "to provide safe ingress and egress to the playground across the parking lot."  *Id.* at 137.  The *Hanks* court distinguished cases like *McDonald* because there were no allegations that the playground-defendants "ever exercised any control over the" parking lot and also because "the injury . . . clearly was not caused by a physical defect in the parking lot or the driveway, but instead was caused by an independent factor, the [motorist]."  *Id.* at 139 (citing *Ziemba*, 566 N.E.2d at 1369).

Hermes Defendants argue that Railroad Defendants' cases are further distinguishable because they involved municipally owned property, not private property.  Reply Mot. Summ. J. 4.  Cases interpreting *McDonald* support that this distinction makes a difference, as noted by the court in *Ford v. Round Barn True Value, Inc.*, 883 N.E.2d 20 (Ill. App. Ct. 2007).  There, the court analyzed the gym-defendant's duty towards its invitee—who was injured on an adjacent parcel of land owned by the store-defendant—and the court found that the gym-defendant owed no duty to its invitee.  *Id.* at 25.  The court discussed *Hanks*, *Cooley*, and *McDonald*, stating that the distinction between private and public property made the instant case more similar to *Hanks*, and highlighted the absence of allegations "that [the gym-defendant] in any way altered [the store-defendant]'s parking lot, interfered with [the store-defendant]'s control and/or maintenance

of its property, or treated [the store-defendant]'s parking lot as its own." *Id.* at 24–25.  Because

the store-defendant "retained all control and maintenance of the parking lot and [the gym-

defendant] was merely given permission to have its customers use [the store defendant]'s

parking lot," the instant case was closer to *Hanks* and the court found that the gym-defendant

"did not owe a duty to [the] plaintiff as the adjacent property owner." *Id.* at 25.

As the final principle relevant to this analysis, the Court notes that Illinois courts

sometimes decline to impose a duty on landowners—even if another actor's intervening

negligence was a reasonably foreseeable consequence of the property's conditions—based on

other factors in the duty analysis, such as "the burden and consequence of imposing a duty." *See*

*Abdo v. Trek Transp. Co.*, 582 N.E.2d 247, 252 (Ill. App. Ct. 1991).  In *Abdo*, the plaintiff's

decedent was killed when his car went under a semitruck which was making a delivery to the

defendant's commercial property and was parked in such a manner as to entirely block "both the

west and eastbound lanes" of the adjacent public road. *Id.* at 249.  The plaintiff sought to

"impose on [the defendant] a duty to insure that [the defendant's] invitees utilize[d] the provided

means of ingress and egress in a reasonably safe manner." *Id.* at 251.  Construing the allegations

in the plaintiff's favor, the court found that "the driver's alleged violation of his statutory duty

not to obstruct traffic was a reasonably foreseeable consequence of the configuration of [the

defendant's] driveway and the materials there placed." *Id.* at 252.  However, the court did not

impose a duty upon the landowner.  It noted that "when a third party is in the best position to

prevent a plaintiff's injury, there is no justification for imposing liability upon a landowner." *Id.*

(citing *Ziemba*, 566 N.E.2d at 1369).  Because the defendant "had neither the right nor ability to

control the truck driver's conduct . . . . [t]he trucking company and truck driver, rather than [the

defendant], were in the best position to prevent plaintiff's decedent's injury." *Id.* at 252–53.  The

court stated that these facts reinforced "the soundness of the policy of not imposing a general duty to guard against the negligence of others." *Id.*

Here, Peter's farm, the Crossing, and the right of way were private property—not municipal property—distinguishing in part the instant case from the "peculiar facts" of cases like *Cooley*, *McDonald*, and *Gilmore*. *See Cooley*, 196 N.E.2d at 398; *Ford*, 883 N.E.2d at 24–25 (citing *Hanks*, 614 N.E.2d at 139). Peter did not pay to use the Crossing, nor did he have any written contract or lease agreement with BNSF regarding the Crossing. Peter Dep. 24:13–20, Resp. Mot. Summ. J. Ex. C, ECF No 84-3; *see also* Peter Aff. ¶ 5, Hermes Defs.' Statement Undisputed Facts Ex. E at 3–4, ECF No. 76-5 (averring that Hermes Defendants do not "own the railroad tracks, crossing, stop signs, or property where this accident occurred, at [the Crossing]."). Hermes Defendants and Railroad Defendants agree that Hermes Defendants "do not maintain the railroad tracks, supporting track structures, stop signs, nor any vegetation that abut or are adjacent to [the Crossing]." Hermes Defs.' Statement Undisputed Facts Summ. J. ¶ 20; Resp. Mot. Summ. J. 6. They also agree that BNSF maintains both the vegetation near and the grade of the Crossing. Hermes Defs.' Statement Undisputed Facts Summ. J. ¶¶ 17–18; Resp. Mot. Summ. J. 8. Railroad Defendants point to no evidence that Hermes Defendants interfered with BNSF's ability to maintain the Crossing or right of way. *See Ford*, 883 N.E.2d at 25 (noting the absence of allegations that the gym-defendant had "in any way altered [the store defendant]'s parking lot, interfered with [the store defendant]'s control and/or maintenance of its property, or treated [the store defendant]'s parking lot as its own"). In other words, Hermes Defendants had no right to control the conditions of the Crossing and were merely allowed to use the Crossing, as were their invitees. *See id.* (finding that communications to invitees regarding permission to use the adjacent property did not amount to an "affirmative act of appropriation").

16

Because Hermes Defendants lacked the right to control the Crossing or right of way, Railroad Defendants were in the best position to address conditions on their own land, such as vegetation near or the grade of the Crossing.  Imposing a duty upon Hermes Defendants to ask Railroad Defendants to maintain the Crossing or right of way (or to notify Railroad Defendants of the need for such maintenance) would impose upon Hermes Defendants a duty—solely by virtue of their status as landowners—to prevent those injuries caused by the conditions on Railroad Defendants' private property which Railroad Defendants were best positioned to prevent.  Illinois courts would not impose such a duty, *see Abdo*, 582 N.E.2d at 252 ("A landowner's duty to those using an adjacent highway arises only by virtue of his status as a landowner and the underlying rationale that a landowner is in the best position to prevent the injury." (citing *Ziemba*, 566 N.E.2d at 1369)), so this Court does not either.  The Court finds that Hermes Defendants did not have a common-law duty to request that Railroad Defendants alter those conditions of the Crossing or BNSF's right of way.

## CONCLUSION

For the foregoing reasons, Peter and Sandra Hermes's Motion for Summary Judgment, ECF No. 74, is GRANTED IN PART and DENIED IN PART, and Plaintiff Kayla Jo Frese's Motion to Strike, ECF No. 101 is GRANTED.  Of the duties which Railroad Defendants alleged were owed by Hermes Defendants, only the alleged duty to safely design, modify, or construct a safe approach to the railroad tracks by making changes to Peter's farm remains.

Entered this 15th day of March, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE